UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| VINCENT A. AMBROSETTI, INDIVIDUALLY AND AS TRUSTEE OF THE KING'S MINSTRELS CHARITABLE TRUST dba INTERNATIONAL LITURGY PUBLICATIONS, and LAMB PUBLICATIONS LLC, | ) ) ) ) ) ) ) ) | **COMPLAINT FOR ANTITRUST VIOLATIONS** |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:19-cv-686 |
| OREGON CATHOLIC PRESS, | ) ) | |
| Defendant | ) ) | |

Donald J. Schmid
Law Offices of Donald J. Schmid
1251 N. Eddy St., Suite 200
South Bend, IN 46617
Tel. 574-993-2280
Email: schmid@donaldschmidlaw.com

Attorneys for plaintiffs Vincent A. Ambrosetti, individually and as trustee of The King's Minstrels Charitable Trust dba International Liturgy Publications, and Lamb Publications LLC

1

## NATURE OF THIS ACTION

This is an action under Sections 1 and 2 of the Sherman Act to stop the anticompetitive and unlawful conduct by defendant Oregon Catholic Press ("OCP"), the largest Catholic music publisher in the United States, and those acting in concert with OCP. This is an action also to remedy the effects of past unlawful and anticompetitive conduct by OCP.

OCP possesses monopoly power in the market for Catholic music publications in the United States. Approximately two-thirds of all Catholic parishes in the United States subscribe to OCP's missal programs or otherwise use OCP's products for their worship services. Additionally, OCP controls a large part of the essential Catholic music repertoire in the United States.

There is a limited accepted Catholic music liturgy repertoire. Over time through custom and practice and in part due to the anticompetitive practices of OCP, Catholic churches, parishes, schools and other congregations have narrowed their demand in substantial ways to a limited repertoire of Catholic liturgical songs and musical compositions. Music publications including hymnals and songbooks as a practical matter must contain a substantial portion of this repertoire in order to be commercially saleable within the United States. In other words, virtually no Catholic congregations or institutions will purchase a published collection of Catholic music that do not contain certain popular songs.

To protect its valuable Catholic music publications monopoly against competition and to maintain and further its monopoly power, OCP has engaged in a series of anticompetitive actions. OCP's illegal anticompetitive conduct includes

entering into market allocation agreements with competitors, which are *per se* violations of the antitrust laws. OCP's anticompetitive conduct also includes imposing burdensome licensing and contractual conditions on certain horizontal competitors including but not limited to the imposition of "publisher's premiums" on certain smaller competitors, refusing to license certain accompaniment editions, licensing only a limited number of musical works under its control in order to hinder and obstruct competition, and threatening and engaging in frivolous copyright litigation against certain horizontal competitors for no legitimate reason except to inhibit these competitors' ability to compete in the market.

## JURISDICTION, VENUE AND INTERSTATE COMMERCE

This Court has jurisdiction over this matter pursuant to Section 4 of the Sherman Act, 15 U.S.C. § 4, and 28 U.S.C. §§ 1331, 1337.

Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391, because defendant OCP transacts substantial business and is found within this judicial district.

Plaintiff Vincent A. Ambrosetti ("Ambrosetti") is a musical artist and songwriter, and does business through and is the Publisher of International Liturgy Publications. The Kings Minstrels Charitable Trust was created under the laws of the State of Maryland and is a Section 501(c)(3) charitable trust. Its trustees include Ambrosetti. The Kings Minstrels Charitable Trust does business under the name International Liturgy Publications and ILP (hereafter referred to as "ILP"). Ambrosetti lives in the State of Tennessee and ILP has its principal office in

Tennessee. Ambrosetti/ILP have been publishing Catholic music since 1977 and operate throughout the United States.

Plaintiff Lamb Publications LLC ("Lamb Publications") is a limited liability company formed under the laws of the State of Tennessee with its principal office and operations in Tennessee. Its primary business is publications and commercial printing, including for Ambrosetti/ILP and in conjunction with /Ambrosetti/ILP.

OCP is a corporation organized and existing under the laws of the State of Oregon, with its principal place of business in Portland, Oregon. OCP sells and has sold since at least 1982 Catholic music publications including missals and other worship editions throughout the United States including in the Northern District of Indiana. A large part of OCP's music library was acquired in a bankruptcy asset purchase from North American Liturgy Resources (NALR). This music library acquired in a bankruptcy asset purchase represents a substantial portion of Catholic music that is necessary for the sale of hymnals in the United States. Upon information and belief, OCP purposely directs a substantial amount of music and missal sales in this judicial district and does a substantial amount of business in this judicial district.

## INJUNCTIVE RELIEF AND DAMAGES

Ambrosetti/ILP and Lamb Publications bring this action explicitly for preliminary and permanent injunctive relief, and for damages, and demonstrate that OCP's conduct constitutes violations of Sections 1 and 2 of the Sherman Act and will cause irreparable injury in the absence of preliminary and permanent injunctive relief.

## THE RELEVANT MARKET

The relevant market consists of the sale and distribution of Catholic music publications and licenses used in the worship of and by Roman Catholic dioceses, parishes, schools, Catholic religious orders, and other Catholic congregations and institutions in the United States. Roman Catholic congregations in the United States and indeed throughout the world require music resources that congregations use on a daily and weekly basis in their liturgies and worship. These music resources include printed songs with music and lyrics including hymnals, missals, missalettes, songbooks, choral books and sheet music, and accompaniment editions. These music resources also include recorded music that are used by choirs and choral groups to prepare music for singing and use in Catholic liturgical services. There are no reasonable economic substitutes for these music resources in the United States.

## MONOPOLY POWER

OCP has illegally maintained its monopoly in the relevant market for Catholic music publications in the United States over an extended period of time. Approximately two-thirds of all Catholic parishes in the United States currently subscribe and have for some time subscribed to OCP's missal/music publications. OCP controls more than 20,000 music copyrights ("OCP-controlled repertoire") and uses those copyrights in the missals and other Catholic music publications that it sells and distributes. OCP has acquired many of its music copyrights from other defunct Catholic music publishers. Upon information and belief, OCP holds and controls an approximately 70% share of the relevant market.

5

OCP has maintained its commanding 70% share of and monopoly power in the relevant market for a significant period, from at least the 1990s to the present. OCP has raised prices substantially above the competitive level during this time. OCP's anticompetitive conduct, as well as some actual entry barriers in the relevant market, prevent new competitors from responding to and competing with these price increases.

## OCP's ANTICOMPETIVE CONDUCT

A. The Agreement to Allocate Markets

In an effort to maintain and further its monopoly market share, beginning in or around 1993 and continuing through 2019, OCP entered into and maintained anticompetitive agreements with the publishers of Catholic music next largest in size/market share. OCP conspired, combined, colluded and agreed with GIA Publications Inc. ("GIA") and J.S. Paluch Company Inc./World Library Publications ("World Library") to allocate the relevant market. These market allocation agreements are *per se* violations of the antitrust laws.

Upon information and belief, representatives of OCP, GIA, and World Library conspired, combined, colluded and agreed that OCP would focus its publishing and commercial efforts on the sale and distribution of softcover seasonal newsprint missalettes, that GIA would focus its publishing and commercial efforts on the sale of hardcover hymnals, and that J.S. Paluch would focus its publishing and commercial efforts on the sale and distribution of weekly church bulletins and advertising and would use its distribution of music missals and hymnals to support and bolster its church bulletin/advertising business. By agreeing to allocate these

6

three sub-markets, these competitors including OCP substantially eliminated any meaningful competition.

At least one representative of the three largest Catholic music publishers OCP, GIA and World Library has admitted the existence of this scheme and agreement to divide the market and additional collusion to a representative of ILP/Lamb Publications. Further, the anticompetitive actions taken by OCP as well as GIA and World Library since the 1990s have been consistent with this *per se* illegal horizontal market allocation agreement and collusion. This market allocation agreement has harmed Ambrosetti/ILP and Lamb Publications and has caused Catholics throughout the United States to pay higher prices for these products than they would otherwise pay in a competitive market through the many years that OCP and its co-conspirators have been agreeing to allocate the market. This market allocation agreement has also made it much more difficult for Ambrosetti/ILP and Lamb Publications to bring music into the relevant market.

B.  The Illegal Monopolization

In addition to entering into an illegal market allocation agreement, OCP has also engaged in illegal monopolization and attempted illegal monopolization. In or around 2011, the then publisher of OCP, John Limb, informed Ambrosetti that he and OCP viewed ILP as a competitive threat to OCP's business and market share. Prior, during, and after that time, and continuing through 2019, OCP engaged in a series of anticompetitive actions and conduct designed in part to damage Ambrosetti/ILP and Lamb Publications and/or drive Ambrosetti/ILP and Lamb Publications out of business in the relevant market. OCP also attempted to drive

7

other competitors besides Ambrosetti/ILP and Lamb Publications out of the relevant market. OCP has used its market power to try and drive Ambrosetti/ILP and Lamb Publications out of the market in order to preserve its improperly maintained position in the market.

OCP's anticompetitive conduct has included the following. In order to publish and sell Catholic music publications including hymnals, missals, songbooks, and accompaniment editions, publishers in the United State must as a practical matter include in their publications not only liturgical songs and music that are in the public domain but also a wide selection of copyrighted liturgical songs and music. Songs and music within this collection including songs and titles controlled by OCP have become an essential part of the repertoire of Catholic liturgical music in the United States and are demanded by consumers of Catholic music publications.

In or around 2009, Ambrosetti/ILP collaborated with another small and local Catholic music publisher to prepare for publication a new hymnal with a diverse selection of songs from the Catholic music repertoire. A selection of music for which OCP controlled the copyrights was to be included in this new hymnal. When OCP learned that Ambrosetti/ILP had become involved in this hymnal project, and that Ambrosetti/ILP eventually would be the lead or primary publisher of this new hymnal (entitled the "Saint Augustine Hymnal"), OCP imposed extra royalty and licensing fees and other conditions that it did not impose on any other Catholic music publishers or licensees at the time or, upon information and belief, since. For example, OCP imposed on Ambrosetti/ILP in license agreements a 10% so-called

8

"publisher's fee" over and above the standard 10% license royalty. This extra 10% "publisher's fee" and premium charge imposed on Ambrosetti/ILP by OCP was called a publisher's fee rather than an additional royalty (which it really was) in order to enable OCP to avoid triggering in other license contracts what are called and known in the industry as "most favored nation clauses." These clauses are a promise by the licensee to treat a licensor equal to any other licensor. To hide what it was doing, OCP required Ambrosetti/ILP by written agreement to keep this extra royalty fee (denominated a "publisher's fee" and premium) secret and to not disclose this extra royalty to any other persons or entities

Further, OCP put a time limit on the use of its copyrighted titles, specifically, a five-year limit on the use of OCP titles in the Saint Augustine Hymnal. This was an extra and additional restriction that was imposed on Ambrosetti/ILP because OCP viewed Ambrosetti/ILP as a "threat" to its monopoly power. This time condition was contrary to standard industry practice wherein licenses for musical titles are customarily given for the "life of the publication" including liturgical hymnals.

By denying Ambrosetti/ILP reasonable access to this facility that OCP controls, OCP has denied Ambrosetti/ILP the ability to compete in their shared market. OCP provides these titles/facilities to other competitors as there is no way any other competitor could reasonably duplicate these songs. Because OCP controlled the titles that had become essential to the viability of Ambrosetti/ILP's music publications, Ambrosetti/ILP had no choice than to pay the higher fees.

9

As part of its anticompetitive conduct, and in an effort to maintain and further its monopoly market power, OCP also refused to deal with Ambrosetti/ILP in terms of providing Ambrosetti/ILP permission to produce accompaniment editions for the Saint August Hymnal project. Accompaniment and choral editions, which provide additional musical settings for choir, organ, piano, guitar, and other musical instruments in support of the congregation's and choir's singing, are essential to the effective marketing, sale, and distribution of Catholic music publications including hymnals in the United States. In this way, OCP attempted to stymie and block Ambrosetti/ILP's marketing and distribution of the Saint Augustine Hymnal in the relevant market by refusing to provide the licenses for the accompaniment and choral editions of the Saint Augustine Hymnal. This highly irregular refusal had no pro-competitive justification and was completely contrary to all industry practices in the relevant market.

As part of its anticompetitive conduct, and in an effort to maintain and further its monopoly power, OCP also refused to allow Ambrosetti/ILP to substitute OCP titles for one another in future and new editions of the Saint Augustine Hymnal. This too was contrary to industry practice. OCP's refusal was for the purpose of hindering Ambrosetti/ILP's development, marketing, and distribution of the Saint Augustine Hymnal in the relevant market over time. Upon information and belief, OCP knew that prohibiting Ambrosetti/ILP from updating the music and songs in the Saint Augustine Hymnal would make the hymnal less commercially attractive, decrease Ambrosetti/ILP's revenues from the hymnal, and would injure Ambrosetti/ILP's position in the relevant market. OCP treated Ambrosetti/ILP in

this unique manner for the purpose of continuing its scheme to drive Ambrosetti/ILP and Lamb Publications out of the market.

As part of its anticompetitive conduct, and in an illegal effort to maintain and further its monopoly market share, OCP attempted to use as few Ambrosetti/ILP copyrighted titles in OCP's own publications in an effort to suppress as much as possible the music library and copyrights that belonged to and were controlled by Ambrosetti/ILP. OCP did this in or around 1985 through 2019 despite Ambrosetti/ILP's willingness at all times to license to OCP for use in OCP publications all of the titles in Ambrosetti/ILP's music catalogue. Upon information and belief, OCP knew that limiting the exposure of Ambrosetti/ILP's music catalogue in the relevant market would decrease Ambrosetti/ILP's revenues including licensing revenues over time, and would injure Ambrosetti/ILP's position in the relevant market

To enhance and maintain its illegal monopoly power, OCP directed musical composers and lyricists to use the song titles of Ambrosetti/ILP's most popular songs (because song titles cannot be copyrighted under applicable law) and to write new music and/or lyrics for these songs so as to avoid having to use and thus promote the most popular part of Ambrosetti/ILP's musical catalogue. OCP did this in or around 1985 through 2019 for the purpose of maintaining and furthering its monopoly power in the relevant market. Indeed, at one point in or around 2011, OCP asked Ambrosetti/ILP for a list of Ambrosetti/ILP's top ten most popular and in demand copyrighted song titles. Ambrosetti/ILP in good faith provided this list to OCP, believing OCP representations that the list was for the purpose of using

Ambrosetti/ILP works in its compilations. Instead, OCP used this list to have new music and/or lyrics written for Ambrosetti/ILP's most popular titles. In so doing, OCP deliberately sowed confusion among consumers in the relevant market because consumers could not quickly or readily discern from OCP marketing materials whether the OCP publications in fact contained the in-demand Ambrosetti/ILP song titles including Ambrosetti/ILP's "top ten" titles. This also created confusion when parishes reported the use of titles to third party licensing groups, redirecting revenues due Ambrosetti/ILP to OCP. By way of example, two of the song titles that OCP deliberately had new music/lyrics written using well-known ILP catalogue song titles were "At the Name of Jesus," (written by Jim Cowan), "Ave Maria" (written by Vincent Ambrosetti), and "Emmanuel" (written by Vincent Ambrosetti).

As part of its anticompetitive conduct, and in an effort to maintain and further its illegal monopoly market share, OCP threatened in or around 2014 through 2016 Ambrosetti/ILP with frivolous copyright infringement litigation after Ambrosetti/ILP properly sought to substitute titles in a new (second) edition of the Saint Augustine Hymnal.

Further, as part of its anticompetitive conduct against Ambrosetti/ILP and in an effort to maintain and further its monopoly market share, OCP in fact filed in April 2016 a frivolous lawsuit in the United States District Court in the District of Oregon wrongfully claiming that Ambrosetti/ILP had infringed OCP-controlled song copyrights. In truth, Ambrosetti/ILP had licenses for the song titles that it used and there was no copyright infringement. OCP filed this frivolous lawsuit in Oregon for the purpose of injuring Ambrosetti/ILP's reputation among musical

artists and composers, to impose burdensome litigation costs on Ambrosetti/ILP, and to drive Ambrosetti/ILP from the relevant market so that OCP could maintain and even increase its monopoly power in the relevant market. This lawsuit was settled by OCP giving Ambrosetti/ILP a lifetime license for all editions of the Saint Augustine Hymnal; however, Ambrosetti/ILP had to accept a "no change in repertoire" provision for any content in the hymnal because OCP knew that this would strengthen and preserve its monopoly power by restricting the content of these books and rendering them unmarketable in the future.

Moreover, upon information and belief, defendant OCP owns LicenSing Online by and through a subsidiary under OCP's control, International Christian Resources, LLC. LicenSing is one of only two comprehensive online Catholic music licensing systems/products whereby consumers of Catholic liturgical music can obtain a license and permission to reprint any of thousands of titles copyrighted by several publishers who participate in the licensing program/product. ILP is a participating publisher. In 2018, OCP merged LicenSing Online with OneLicense.net, the only other comprehensive online music licensing system in the United States. OneLicense.net was initially owned by GIA Publications Inc. of Chicago, Illinois, a horizontal competitor of OCP. The merged OneLicense.net is now owned by both GIA and OCP together, the two largest holders of market share in the relevant market. Now operating only under OneLicense.net, OCP changed the pricing structure for the merged entity and such that the changed pricing structure has had an adverse impact on participating publishers and consumers in the relevant market. This revised pricing reduced income to horizontal competitors

13

and increased the cost to consumers. This anticompetitive merger will further maintain and enhance OCP's monopoly power in the relevant market.

Additionally, OCP has actively interfered with Ambrosetti/ILP's and Lamb Publications' development of a new and innovative product in the relevant market (the sale and distribution of Catholic music publications and licenses used in the worship of and by Roman Catholic dioceses, parishes, schools, Catholic religious orders, and other congregations in the United States), namely, custom hymnals including diocesan hymnals. Since 2009, and continuing through 2019, Ambrosetti/ILP has worked with Catholic dioceses and individual parishes in the United States to create and publish custom hymnals for their congregations. Ambrosetti/ILP has worked with teams of advisors within these dioceses and parishes to select songs from the accepted Catholic music liturgy repertoire. Lamb Publications has served as the exclusive press for some of these custom hymnal projects.

As part of its anticompetitive conduct, and in an effort to maintain and further its illegal monopoly market share, OCP in April 2019 informed Ambrosetti/ILP that OCP would impose a 10-OCP song limit on any Ambrosetti/ILP publication including any custom diocesan or parish hymnal published or produced by Ambrosetti/ILP. In doing this, OCP is trying to suppress and prevent the publication and production of custom hymnals by Ambrosetti/ILP or Lamb Publications because OCP knows that substantially more than 10 titles from the OCP-controlled repertoire is required to make these custom hymnals viable in the relevant market. OCP's use of this 10-OCP song limit since April 2019 has

substantially interfered with Ambrosetti/ILP's and Lamb's ability to move forward with custom hymnal projects with the Diocese of Fort Wayne – South Bend (Indiana), the Diocese of Raleigh (North Carolina), the Diocese of Charlotte (North Carolina), the Diocese of Jefferson City (Missouri), the Diocese of Steubenville (Ohio), the Diocese of Springfield (Illinois), and the Diocese of Colorado Springs (Colorado).  OCP knows that the custom hymnal projects and sales are a direct competitive threat to its monopoly position and OCP is working arduously to kill these projects and this innovation in the relevant market in order to protect its monopoly position.

The music titles in accepted Catholic music liturgy repertoire that OCP controls through license and copyright administration constitute an essential facility in the relevant market, namely, the sale and distribution of Catholic music publications and licenses used in the worship of and by Roman Catholic dioceses, parishes, schools, Catholic religious orders, and other congregations in the United States.  Plaintiffs are unable to practically or reasonably duplicate this essential facility because no Catholic congregations or institutions will purchase a published collection of Catholic music that does not contain certain popular songs from the repertoire controlled by OCP.  OCP has denied the use of these popular and required music titles to the plaintiffs despite the fact that licensing of these titles and use of this essential facility would be not only feasible but easy through standard musical licenses.

Indeed, OCP through its denial of these popular and required music titles to the plaintiffs is injuring not only the plaintiffs who are attempting to publish

hymnals that will compete with OCP's offerings but OCP by denying the plaintiffs musical licenses for these works is also injuring and denying revenues to the authors and composers of these works who receive all or a portion of the royalties that would be paid by the plaintiffs or their publication partners pursuant to standard music licenses.  In this way, OCP's denial of this essential facility to the plaintiffs is economically irrational – except to the extent that it furthers OCP's monopolization efforts.

**FIRST CLAIM FOR RELIEF**
(Monopolization and Attempted Monopolization
in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2)

The plaintiffs incorporate the allegations of paragraphs 1 through __ above.

Beginning in or around 1993 and continuing through 2019, defendant OCP has unlawfully monopolized, attempted to monopolize, and combined and conspired with other persons to monopolize a part of the trade or commerce among the several states in the United States.

In so doing, OCP has caused individual injury and damages to Ambrosetti/ILP and Lamb Publications and to consumers in the relevant market as well as to authors/composers who would receive royalties on music titles controlled by OCP.  Specifically, OCP has suppressed Ambrosetti/ILP and Lamb Publication sales and distribution of Catholic music publications and the licensing of Ambrosetti/ILP copyrighted song titles.  Also, OCP has caused consumers of Catholic music publishers to pay inflated prices for Catholic music publications and for the licensing of Catholic liturgical and worship music and songs.  These

antitrust impacts have caused measurable damages to Ambrosetti/ILP and Lamb Publications and also to consumers and music authors/composers in the relevant market.

**SECOND CLAIM FOR RELIEF**
(Horizontal Market Allocation Agreements
in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

The plaintiffs incorporate the allegations of paragraphs 1 through __ above.

Beginning in or around 1993 and continuing through 2019, defendant OCP conspired, combined, colluded and agreed with other horizontal competitors in the relevant market to allocate certain shares of the relevant market. In so doing, OCP has combined, contracted, and conspired in restraint of trade or commerce among the several states in the United States.

OCP has thereby caused individual injury and damages to Ambrosetti/ILP and Lamb Publications and to consumers and music artists in the relevant market. Specifically, OCP has suppressed Ambrosetti/ILP sales and distribution of its Catholic music publications and the licensing of Ambrosetti/ILP copyrighted song titles. Also, OCP has caused consumers of Catholic music publishers to pay inflated prices for Catholic music publications and for the licensing of Catholic liturgical and worship music and songs. These antitrust impacts have caused measurable damages to Ambrosetti/ILP and Lamb Publications and to consumers and music authors/composers in the relevant market.

Additionally, as a direct and proximate result of the foregoing acts and conduct, the plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law.

The plaintiffs are informed and believes and on that basis allege that, unless enjoined and restrained by this Court, the defendant will continue to engage in collusive and anticompetitive conduct that is in violation of Sections 1 and 2 of the Sherman Act.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for relief as follows:

1. With respect to Claims for Relief One and Two, for treble damages in such amount as may be found, or as otherwise permitted by law. 15 U.S.C. § 15(a).

2. For a preliminary and permanent injunction prohibiting the defendant and its respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from as follows:

   a. agreeing to any kind of market allocation with any horizontal competitors or engaging in any execution of any existing agreements, combinations, or collusions to allocate share in the relevant market; imposing any "publisher's premium" or other licensing fee over and above a standard licensing royalty fee; refusing to license accompaniment editions when it has agreed to license works from its musical catalogue; refusing to license works from the repertoire under its control; or engaging in any other anticompetitive conduct toward the plaintiffs.

   b. merging LicenSing Online and OneLicense.net or, if merged already, from operating the merged entity/program that came from the merger of LicenSing Online and OneLicense.net.

      c.    refusing to license songs/titles from the OCP-controlled repertoire for any publication by ILP or Lamb Publications, including any custom hymnal project in which ILP or Lamb Publications is involved.

5.    For prejudgment interest according to law.

6.    For the plaintiffs' attorneys' fees, costs, and disbursements in this action.

7.    For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the plaintiff demands a trial by jury of all issues so triable.

Dated: August 27, 2019

                                        Respectfully submitted,

                                        /s/ *Donald J. Schmid*

                                        _____
                                        Donald J. Schmid

                                        Law Offices of Donald J. Schmid
                                        1251 N. Eddy St., Suite 200
                                        South Bend, IN 46617
                                        Tel. 574-993-2280
                                        Email: schmid@donaldschmidlaw.com

                                        Attorneys for plaintiffs Vincent A.
                                        Ambrosetti, individually and as trustee of
                                        The King's Minstrels Charitable Trust dba
                                        International Liturgy Publications, and
                                        Lamb Publications LLC