UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VINCENT A. AMBROSETTI, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:19-CV-686 RLM |
| OREGON GATHOLIC PRESS, | ) |
| Defendant. | ) |

OPINION AND ORDER

Vincent Ambrosetti, The King's Minstrels Charitable Trust, and Lamb Publications, LLC sued Oregon Catholic Press for monopolization in violation the Sherman Act, 15 U.S.C. §2 and for a horizontal market allocation in violation of the Sherman Act, 15 U.S.C. §1. Oregon Catholic Press moved to dismiss for failure to state a claim, or alternatively for partial summary judgment.

Taking the allegations set forth in the complaint as true, Oregon Catholic Press is the largest Catholic music publisher in the United States. Two-thirds of United States Catholic parishes subscribe to Oregon Catholic Press's missal programs or use its products for services. Oregon Catholic Press controls a large part of the essential Catholic music repertoire in the United States. The plaintiffs allege that Oregon Catholic Press entered into market allocation agreements with the three largest Catholic music publishers and engaged in a course of conduct designed to harm Lamb Publications in order to reduce competition.

To survive a motion to dismiss under Rule 12(b), the factual allegations in a complaint must "state a claim to relief that is plausible on its face" – one that

"raise[s] a right to relief above the speculative level", "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and gives the defendant fair notice of the claims being asserted and the grounds upon which they rest. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court deciding whether claims asserted are plausible construes the complaint in the light most favorable to the plaintiffs, accepts all well-pleaded facts as true, draws all reasonable inferences in the plaintiff's favor, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 648 (7th Cir. 2017), and generally won't consider matters outside the pleadings or engage in fact-finding. *See* Fed. R. Civ. P. 12(d); Reger Dev., LLC v. National City Bank, 592 F.3d 759, 763 (7th Cir. 2010); Stakowski v. Town of Cicero, 425 F.3d 1075, 1078 (7th Cir. 2005).

The plaintiffs allege that Oregon Catholic Press violated the Sherman Act, 15 U.S.C. § 2, by engaging in anticompetitive conduct and 15 U.S.C. § 1 with a horizontal market allocation agreement. Oregon Catholic Press attached documents to their motion to dismiss, which they argue the court must consider in ruling on the motion to dismiss or, in the alternative, the court must convert the motion to dismiss into a motion for summary judgment.

A court generally may consider only the pleadings at the motion to dismiss stage. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002). But "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A district court can

2

consider a document "referred to in the complaint, provided it was a concededly authentic document central to the plaintiff's claim" without converting the motion to dismiss into a motion for summary judgment. Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002).

The second amended complaint specifically refers to the licensing agreements, letter, and settlement agreements as forms of anti-competitive conduct in which Oregon Catholic Press has engaged. The plaintiffs didn't argue that the exhibits aren't authentic. The court has considered Exhibits A, B, C, D, and E in ruling on this motion.

In 2017, the plaintiffs and Oregon Catholic Press settled an earlier lawsuit with a settlement agreement that included a release of claims. The release provides that the parties release all claims, known and unknown, from the beginning of time to February 15, 2017. Oregon Catholic Press argues that this release forecloses all of the plaintiffs' claims, except those related to LicenSing Online. The plaintiffs argue that they will be able to show conduct that occurred after the release, so dismissing their claims based on the release would be inappropriate. The plaintiffs are correct that they haven't released claims based on conduct that began after the release, but Oregon Catholic Press is correct that pre-release conduct that continued after the release doesn't form a new claim and so was released. MCM Partners v. Andrews-Bartlett & Assocs., 161 F.3d 443, 448 (7th Cir. 1998) ("MCM contends that Andrews Bartlett's refusal to deal with MCM from July 1992 until October 1994, based on alleged continued adherence to the April 1992 agreement, gives rise to non-barred causes of action.

3

However, this claim is clearly based on pre-April 25, 1992 conduct and, as such, is expressly barred by the Release."). The court considers the motion to dismiss based on alleged antitrust violations that began after February 15, 2017.

"The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Eastman Kodak Co. v. Image Technical Servs., 504 U.S. 451, 481, 119 L. Ed. 2d 265 (1992). Possession of monopoly power isn't unlawful unless it is accompanied by an element of anti-competitive conduct. Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 407, 124 S. Ct. 872, 879 (2004). Oregon Catholic Press reserved the right to contest that it has a monopoly, but doesn't do so in its motion to dismiss.

The plaintiffs allege that Oregon Catholic Press engaged in the following conduct:

1. Imposed extra royalty and licensing fees and other conditions upon Lamb Publications that weren't imposed on other publishers or licensees.
2. Put a time limit on the use of its copyrighted titles contrary to standard industry practice.
3. Refused to permit Lamb Publications to produce accompaniment editions for the original Saint Augustine Hymnal.
4. Refused to allow Lamb Publications to substitute titles for one another in new additions of the hymnal.
5. Attempted to limit its use of Lamb Publications copyrighted songs to suppress Lamb Publications's music library and copyrights.
6. Directed musical composers and lyricists to use the same song titles as Lamb Productions's most popular songs to confuse consumers.
7. Filed a frivolous lawsuit.

8. Obtained control of LicenSing Online and changed its pricing structure to produce an adverse impact on publishers and consumers.
9. Interfered with Lamb Publications's development of new products by imposing a limit of 10 songs whose copyright is controlled by Oregon Catholic Press in any Lamb Publications publication.

Oregon Catholic Press argues that the Section 2 claim should be dismissed because (1) it had no duty to deal with the plaintiffs, and (2) competition between songs with the same title isn't an antitrust violation. The second amended complaint alleges that after February 15, 2017 Oregon Catholic Press: refused to allow Lamb Publications to substitute songs; directed composers to use the same titles as Lamb Publications's most popular songs to confuse consumers; obtained control of LicenSing and changed its price structure; and changed its course of dealings such that it didn't allow the plaintiffs to use more than ten songs in a publication (prior licensing agreements specify that only ten songs could be used per publication, but the plaintiffs allege that until April 2019, Oregon Catholic Press had allowed him to use more than ten). The other conduct was either alleged to begin before February 15, 2017, or demonstrably began before that date based on the exhibits submitted by Oregon Catholic Press.

Oregon Catholic Press argues that since it had no duty to deal with the plaintiffs at all, its refusal to allow them to substitute songs in a publication can't be a basis for antitrust liability. Ordinarily a business has no duty to deal with another firm, Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 408, 124 S. Ct. 872, 879 (2004), but "under certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate § 2." Id. The plaintiffs allege that refusal to allow them to use more than

5

ten songs has no legitimate business purpose, is contrary to industry practice, and was done solely for the purpose of reducing competition. Oregon Catholic Press argues that, because the material at issue is copyrighted, there is a presumption that its refusal to deal has a rational business justification. Oregon Catholic Press cites to decisions by the First, Ninth, Tenth, and Federal Circuits for that presumption. Our court of appeals hasn't addressed the presumption established by these other circuits. The court need not determine whether such a presumption exists in this circuit, however, because all of the other court of appeals' decisions agree, and Oregon Catholic Press concedes, that the presumption of a rational business justification can be rebutted. *See* Image Tech. Servs. v. Eastman Kodak Co., 125 F.3d 1195, 1212 (9th Cir. 1997); SOLIDFX, LLC v. Jeppesen Sanderson, Inc., 841 F.3d 827, 843 (10th Cir. 2016); Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1187 n.64 (1st Cir. 1994); CSU, L.L.C. v. Xerox Corp. (In re Indep. Serv. Orgs. Antitrust Litig.), 203 F.3d 1322, 1329 (Fed. Cir. 2000). The plaintiffs say Oregon Catholic Press's conduct was contrary to industry practice and done for the purpose of harming Lamb Publication, Oregon Catholic Press's competitor and one of the plaintiffs. That allegation is sufficient to rebut the presumption of a rational business justification for the purpose of a motion to dismiss.

Based on the plaintiffs' allegations, this case bears similarities to Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985). In Aspen Skiing Co., Ski Co. had for many years operated in partnership with Highlands Skiing to create interchangeable ski lift tickets that would allow skiers to use any of the

three mountains owned by Ski Co. or the one owned by Highland. Id. at 590. After 15 years, Ski Co. offered to continue the interchangeable ski lift tickets only if Highland would do so on unfavorable terms. Id. at 591. Highland refused the offer and tried to come up with other solutions, such as giving their guests vouchers to be redeemed at any of the three Ski Co. mountains. Ski Co. refused to accept the vouchers, even though the vouchers were secured by funds in a bank account. Id. at 594. The Supreme Court determined that a jury could reasonably have found that Ski Co. elected to forgo short-term benefits to reduce competition in the skiing market in violation of § 2. Id. at 608. The plaintiffs say Oregon Catholic Press changed its course of dealing to only allow use of ten songs per publication, that the decision caused Oregon Catholic Press to forgo benefits, and that the conduct was contrary to industry practice. While Oregon Catholic Press may well have a legitimate business purpose for these limitations, that is a factual question to be developed at a later date.

     Oregon Catholic Press also argues that, even if it does have a duty to deal with the plaintiffs, it has no duty to deal on their terms. The case on which Oregon Catholic Press relies starts with a firm that has no antitrust duty, and from there emphasizes that, since there isn't a duty to deal, there can't be a duty to deal on the plaintiff's preferred terms. Pac. Bell Tel. Co. v. linkLine Communs., Inc., 555 U.S. 438, 450 (2009). The court can't determine at the pleadings stage that, as a matter of law, Oregon Catholic Press had no duty to deal with the plaintiffs, so Pacific Bell is inapposite. The plaintiffs' allegations at to the

anticompetitive nature of the ten-song limit are enough to avoid dismissal, so the claim survives the motion to dismiss.

The plaintiffs allege that Oregon Catholic Press and others created an illegal combination and market allocation agreement years before 2017, but that they are basing their complaint on an agreement that they say ran from February 16, 2017 to August 2019. Taking the plaintiffs' allegations as true, as the court must in a motion to dismiss, a representative of one of the companies that they allege engaged in an illegal combination and market allocation agreement admitted that the companies had done so. This allegation is sufficient to "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Bell Atlantic v. Twombly, 550 U.S. at 556. And since the plaintiffs don't allege that the agreement that they are challenging existed before February 15, 2017, this claim wasn't released in the parties' settlement agreement.

The second amended complaint includes a request for a preliminary injunction. The court can't consider the request for a preliminary injunction because the requirements of Local Rule 65-2(a) haven't been met.

Accordingly, the court DENIES Oregon Catholic Press' motion to dismiss [Doc. No. 15] and DENIES the plaintiffs' request for a preliminary injunction without prejudice.

SO ORDERED.

ENTERED:   August 18, 2020

/s/  Robert L. Miller, Jr.
Judge, United States District Court